MJC2012R00567

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : Criminal No. GLR-13-0473 |
| v. | : |
| | : |
| JACQUALYN SUE CALDWELL, | : (Conspiracy to Defraud a Student |
| | : Financial Aid Program, 18 U.S.C. § |
| Defendant. | : 371) |
| | : |

...oOo...

# INFORMATION

## COUNT ONE

**(Conspiracy to Defraud a Student Financial Aid Program)**

The United States Attorney for the District of Maryland charges that:

### Introduction

At all times relevant to this Information:

1. Defendant **JACQUALYN SUE CALDWELL** ("**CALDWELL**") was a Maryland resident who worked as a test administrator for Wonderlic, Inc., a company that offered cognitive ability testing to schools and businesses.

2. **CALDWELL** administered short-form cognitive ability tests to persons interested in enrolling at the All-State Career School ("All-State"), a post-secondary, for-profit trade school located at 2200 Broening Highway, Baltimore, Maryland. All-State offered a variety of courses and certifications in the fields of health care, construction, and commercial trucking.

3. All-State was an accredited institution that participated in the federal financial aid programs administered by the United States Department of Education ("DOE"), which enabled

students enrolled at All-State to obtain post-secondary federal grants and federally insured loans to cover tuition and expenses.

4. All prospective students interested in enrolling at All-State met with an admissions representative to learn about course requirements, the cost of tuition, and the available types of financial aid. Students who expressed an interest in a particular program filled out an application, paid an initial admissions fee, and, if needed, were referred to All-State's Financial Aid Department where they received advice about completing the Free Application for Federal Student Aid ("FAFSA"), a prerequisite for seeking educational grants and loans, such as Pell Grants and student loans.

5. Federal student aid is funded and insured pursuant to subchapter IV of chapter 28 of Title 20 (the Higher Education Act of 1965 as codified and amended at Title 20 U.S.C. § Section 1070 *et seq.*) and administered by the DOE. In addition to meeting DOE's minimum income and asset requirements, a student applying for post-secondary financial aid had to have a high school diploma, a GED, or pass a designated Ability to Benefit test ("ATB"), such as the one offered by Wonderlic. As an authorized test proctor, **CALDWELL** administered Wonderlic's ATB test onsite at All-State's Baltimore campus on Wednesday evenings and Saturday mornings.

6. Scoring the ATB tests was not part of **CALDWELL**'s job; rather, to insure the validity of the test results, the Wonderlic test-taking procedures required **CALDWELL** to proctor the tests, collect the students' answer sheets, seal them in a Federal Express envelope and mail them to Wonderlic headquarters in Vernon Hills, Illinois, where they were scored and the results sent back to Allstate. The ATB test had ninety questions and used a Scan Tron answer sheet that required students to use pencils to fill in circles next to the correct answers so they could be scanned and

2

scored by a computer. Students had one hour to complete the test. Student applicants who failed the ATB test the first time could take it again. A student who failed the test the second time had to wait sixty days before taking it a third time.

## The Conspiracy

7. From in or about August 2008 until in or about December 2011, in the District of Maryland,

### JACQUALYN SUE CALDWELL,

the defendant herein, did unlawfully, knowingly and willfully conspire, combine, confederate and agree with Barry Sugarman and other All-State employees known and unknown to the United States Attorney, to defraud a student financial aid program, that is, to knowingly and willfully obtain by fraud, false statement and forgery, funds, assets and property of a student assistance program provided and insured under subchapter IV of chapter 28 of Title 20, in an amount greater than $200, in violation of 20 U.S.C. § 1097(a) ("the conspiracy to defraud").

## Manner and Means of the Conspiracy

8. It was part of the conspiracy to defraud that **CALDWELL** accepted requests from All-State admissions representations to correct wrong answers on ATB tests taken by prospective students who failed the test the first time so those students would become eligible to enroll at the school and receive federal financial aid, including Pell Grants and/or federally insured student loans.

9. It was part of the conspiracy to defraud that **CALDWELL**, at the request of All-State admissions representatives, violated Wonderlic test-taking procedures by giving the

3

admissions representatives access to prospective student's answers sheets for the ATB test before they were delivered to Wonderlic to be scored.

10. It was part of the conspiracy to defraud that **CALDWELL**, at the request of admissions representatives, used an unofficial answer key without the knowledge and authority of Wonderlic to identify and correct the wrong answers on the ATB tests of certain students who had taken the test for the second time.

11. It was part of the conspiracy that **CALDWELL** and the admissions representatives concealed the falsification of ATB answer sheets from Wonderlic and DOE in order to insure that approximately 170 prospective All-State students passed the ATB test and became eligible to enroll at the school and receive post-secondary financial student aid.

### Overt Acts

12. In furtherance of the conspiracy and to effect the objectives thereof, the Defendant and her co-conspirators committed the following overt acts in the District of Maryland:

    a. On or about September 28, 2011, Barry Sugarman told a prospective student, Student A, who had failed the ATB on the first attempt, not to worry about taking the test a second time.

    b. On or about October 6, 2011, **CALDWELL** changed Student A's answers on the second ATB test by erasing the wrong answers on the ATB answer sheet and substituting the correct ones, which gave Student A a passing score.

    c. On or about October 6, 2011, Barry Sugarman met with Student A to inform him that he had passed the ATB test on the second try.

18 U.S.C. § 371

Rod J. Rosenstein
United States Attorney for the
District of Maryland

Date: 9/9/13